IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENT S.,[1]                                        6:20-CV-00206-BR

        Plaintiff,                           OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

KATHERINE EITENMILLER
MARK A. MANNING
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3706

      Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Brent S. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on May 25, 2018, alleging a disability onset date of November 30, 2014. Tr. 158-61.[1] The application was denied initially and on

---

[1] Citations to the official transcript of record filed by the Commissioner on July 31, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 23, 2019.  Tr. 32-69.  Plaintiff was represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on October 3, 2019, in which he found Plaintiff is not disabled, and, therefore, Plaintiff is not entitled to benefits.  Tr. 15-22.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on December 12, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on October 5, 1971, and was 47 years old at the time of the hearing.  Tr. 158.  Plaintiff has a high-school education.  Tr. 719.  Plaintiff has past relevant work experience as a heavy-equipment operator and contractor.  Tr. 26.

Plaintiff alleges disability due to manic depression, rapid cycling bipolar disorder, suicidal ideology, attempted suicide, personality disorder, and carpal-tunnel syndrome (CTS).  Tr. 71.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 23-25.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his November 30, 2014, alleged onset date.  Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of a depressive disorder and a personality disorder.

7 - OPINION AND ORDER

Tr. 20.  The ALJ found Plaintiff's CTS is nonsevere.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] can perform simple, routine tasks, and can tolerate occasional contact with coworkers and the general-public.  The individual cannot engage in team-based work activity.

Tr. 22.

At Step Four the ALJ found Plaintiff cannot perform his past relevant work.  Tr. 25.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy.  Tr. 25.  Accordingly, the ALJ concluded Plaintiff is not disabled.

## **DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinions of Josh Boyd, Psy.D., and Susan South, Psy.D., reviewing psychologists; and (3) partially rejected the opinion of Randall Hunt, M.S., treating therapist.

I.    **The ALJ erred when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

9 - OPINION AND ORDER

(same).  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In an August 3, 2018, Adult Function Report Plaintiff stated he will sometimes go "2-3 days . . . and as long as 20 days" without feeding himself and often does not brush his teeth. Tr. 220.  Plaintiff noted when he is in a manic phase he "will keep busy up to 8 hours," but when he is depressed he "will not go outside for days."  Tr. 221.  Plaintiff stated he has "minimal contact with friends and family," but he spends time daily with his girlfriend.  Tr. 222.  Plaintiff noted he is "argumentative, confrontational against those who I feel are liberal and unaccountable.  Short & critical of my girlfriend.  Somewhat critical of family."  Tr. 223.  Plaintiff stated since his illness began he "will go out to socialize and drink to excess" and engage in "self destructive behavior and [is] confrontational."  Tr. 223.  Plaintiff handles stress "poorly" and avoids change.  Tr. 224.  Plaintiff noted he can pay attention "usually indefinitely" and follows written instructions "to the letter for successful completion or outcome when [it is] important and [I] feel[] like I will comply."  Tr. 223. Plaintiff, however, also stated it "takes [him] effort to listen

or even complete sentences, to [*sic*] many thoughts triggered by phrases spoke by others [and he] misplace[s] letters during spelling." Tr. 225. Plaintiff described his ability to get along with authority figures as "fair." Tr. 223. He "usually will be diplomatic but will be confrontational if disrespected." Tr. 223.

Plaintiff testified at the hearing that he will work on projects in his shop when he is experiencing mania. When "the depression sets in . . . [he] will sit in the dark for, easily, two weeks or more. 17 days was the last count." Tr. 49. During manic episodes Plaintiff experiences a "high degree of irritation." Tr. 50. For example, in May 2019 Plaintiff got frustrated and destroyed a lawn tractor with a sledgehammer. Plaintiff stated he does not engage in activities "outside of his property" because he does not "feel good in public." Tr. 54.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. The ALJ noted Plaintiff exhibits the following symptoms:

> variable mood, irritability, some interpersonal problems, depressed mood, sleep disturbance, decreased motivation, poor energy, poor concentration, memory problems, guilt, decreased

11 - OPINION AND ORDER

> self-esteem, anger, crying spells, fear of
> abandonment, anhedonia, perseveration, high-risk
> behavior, poor social interaction, psychomotor
> slowing, decreased stress tolerance, unpleasant
> memories, and some suicidal ideation including
> multiple attempts.

Tr. 23.  The ALJ also noted, however, that Plaintiff's mental-
status examinations reflected

> alertness, orientation, a pleasant and cooperative
> demeanor, a casual but well-groomed appearance,
> intact hygiene, good eye contact, clear speech no
> abnormal psychomotor activity, no tics, tremors,
> or other abnormalities evident, variable mood and
> affect, fleeting suicidal ideation, intact memory,
> good abstraction, average to above average fund of
> knowledge, intact attention and concentration,
> good insight and judgment, and a linear,
> organized, and goal-directed thought process, but
> occasional agitation, variable impulse control,
> and some  difficulty with interpersonal
> interactions.

Tr. 23-24.  The ALJ pointed out that Plaintiff experienced "some
improvement in symptoms" when he underwent consistent therapy and
took lithium and Lamictal.  Tr. 24.

    The ALJ also found Plaintiff's limitations were "not fully
supported by his reported" activities of daily living.  The ALJ
noted Plaintiff indicated he could "perform adequate self-care,
prepare meals, do household chores, engage in yard work, and go
out to the store."  Tr. 25.

    The record, however, reflects Plaintiff suffered severe
symptoms even while on medication and undergoing therapy and that
Plaintiff's mental-health condition made it difficult for him to
remain compliant with treatment and taking medication.  For

12 - OPINION AND ORDER

example, in December 2014 Craig Jackson, M.D., treating
physician, prescribed Wellbutrin and clonazepam when Plaintiff
was hospitalized for six days after attempting suicide.  Tr. 399.
From December 2014 through January 2015 Plaintiff also underwent
therapy, and in February 2015 Dr. Jackson prescribed Bupropion.
Nevertheless, in July 2015 Plaintiff reported worsening,
uncontrolled anxiety.  Dr. Jackson noted Plaintiff was taking his
medications, but he "need[ed] medication management by
psychiatry" and further therapy.  Tr. 388.  Accordingly,
Dr. Jackson referred Plaintiff "to psychiatry."  Plaintiff
engaged in therapy in August and September 2015, during which
time he often presented as "flat and blunted," anxious,
irritable, and depressed.  Tr. 628-31.  In October 2015 Plaintiff
went "off med[ications] on his own," and Dr. Jackson recommended
Plaintiff keep seeing his therapist and "continue medication
management" even though he appeared "stable."  Tr. 386.

The record also reflects Plaintiff's multiple suicide
attempts and his struggle to maintain a manageable level of
mental-health symptoms.  For example, on March 7, 2017, Plaintiff
reported to Dr. Jackson "for alcohol intoxication and possible
suicide ideation (but has had these thoughts all his life)."
Tr. 380.  Dr. Jackson noted Plaintiff had not been seen by a
therapist since "about 2016" and was not on any medications.
Tr. 380.  Dr. Jackson directed Plaintiff to discontinue using

13 - OPINION AND ORDER

alcohol and prescribed Vortioxetine.  Nevertheless, on April 16, 2017, Plaintiff was taken to the emergency room after he attempted to hang himself.  Emergency medical staff noted Plaintiff was intoxicated and was not taking any medications. Plaintiff was seen by James Martin, M.D., at which time Plaintiff "acknowlege[d] chronic depression . . . [and] [i]nitially he denied a problem with alcohol but at the end of his visit he did acknowledge this."  Tr. 298.  Dr. Martin restarted Plaintiff on Wellbutrin and recommended Plaintiff attend therapy sessions. Plaintiff attended individual therapy sessions with Kim Codding, L.C.S.W., from April 2017 through December 2017.  In April and May 2017 Plaintiff did not report having suicidal ideation, but in April 2017 he "did sell (for money to pay bills) his train collection that he has had since he was a young child."  Tr. 604. On May 10, 2017, Plaintiff reported "significant difficulty with rage."  Tr 605.  On May 24, 2017, he reported he "was feeling quite suicidal and . . . may have made a [suicide] attempt had his sister not reached out" to him.  Tr. 606.  On May 25, 2017, Dr. Jackson called the police to "escort [Plaintiff] over to hospital for evaluation" due to Plaintiff's "recent suicide attempt and [the fact that Plaintiff was] visually upset and verbalizing more thoughts of suicide, talking about his will." Tr. 374.  Dr. Jackson increased Plaintiff's dosage of Wellbutrin and referred Plaintiff "to mental health for medication

14 - OPINION AND ORDER

management."  Tr. 375.  On May 31, 2017, Plaintiff had a "melt

down at his job site."  Tr. 607.  On June 1, 2017, Plaintiff

reported he did "not want to continue to live."  Tr. 608.  On

June 9, 2017, Plaintiff was "brought to the ER by police after

finding [him] in suicidal attempt by hanging."  Tr. 422.

Plaintiff was intoxicated, "combative[,] and agitated."  Tr. 422.

The emergency-room physician recommended Plaintiff to be

admitted, but Plaintiff was discharged later on June 9, 2017.

On September 9, 2017, Kim Codding, Q.M.H.P., noted Plaintiff had

"obtained a new medication provider and has become stable on

[l]amotrigine."  Tr. 612.  Nevertheless, Q.M.H.P. Codding noted

Plaintiff "may regress, isolate, and become suicidal" without

continued treatment."  Tr. 612.  On January 3, 2018, Plaintiff

reported to Carrie Kralicek, N.P., treating nurse practitioner,

that he did not "think [he] would make it Saturday night.  [He

was] in severe depression and [he] had the worst suicidal

thoughts [he'd had] since [he] was inpatient [in November 2014]."

Tr. 592.  Plaintiff, however, "decline[d] an increase in his

medication as well as trialing a mood stabilizer."  *Id*.  On

January 20, 2018, Plaintiff was brought by police to the

emergency room because a bartender reported Plaintiff "was

drinking alcohol . . . [and] began making suicidal statements."

Tr. 301.  Plaintiff "presenting mental health symptomology

. . . included:  alcohol intoxication; agitation; labile affect;

15 - OPINION AND ORDER

anger; irritability; impulsi1lity; unreliable & inaccurate
historian." Tr. 585.  Plaintiff "was noted to have signs of
injury to [his] anterior neck," but Plaintiff "stat[ed] . . . he
used sandpaper to cover old scars."  Tr. 301.  On January 20,
2018, Jessica Harris, Q.M.H.P., examined Plaintiff after he "was
allowed to sober in the emergency department."  Tr. 585.  Harris
noted Plaintiff's behavior "was cooperative and [he] answered
questions appropriately," his "attention and concentration were
intact."  Tr. 586.  Daniel McGee, M.D., and Q.M.H.P. Harris
evaluated Plaintiff and "assessed [he was] not to currently be of
imminent danger to self" or others "and [he] was safe to
discharge to his sister's care."  Tr. 586.  On February 3, 2018,
Plaintiff reported to N.P. Kralick that he had "suicidology that
won't go away" and that he has "been struggling for weeks with
suicidal ideation."  Tr. 589.  Plaintiff "appear[ed] irritable
and frustrated[,] . . . intrusive and irritable. . . .  His
[s]peech was] moderately fast with loud voice and fluctuating
rhythm."  Tr. 590.  N.P. Kralick encouraged Plaintiff to continue
counseling with Q.M.H.P. Codding and prescribed Lithium.
Throughout 2018 Plaintiff met with Q.M.H.P. Codding for
individual therapy during which Plaintiff reported ongoing
suicidal ideation, irritability, and distractibility.  On June 7,
2018, Plaintiff noted he had discontinued alcohol use and was
"taking his medications without side effects."  Tr. 574.

Plaintiff stated his medications "balance things," but he also reported "he destroyed over 1000.000 worth of equipment in his shop" in a bout of extreme irritability. Tr. 574.  In October 2018 Plaintiff's prescription for lamotrigine ran out, and he had not been taking Lithium consistently.  N.P. Kralick noted "due to abnormal lab values and [Plaintiff's] request[,] his lithium will be tapered and discontinued," but he would "re-start his lamotrigine."  Tr. 602.  On November 1, 2018, Q.M.H.P. Codding noted Plaintiff continued to have suicidal ideation and was suffering from an "inability to focus" and irritability, which was making it difficult for him to "comply with med[ications]."  Tr. 621.  In February 2019 John Warner, P.M.H.N.P., treating psychiatric nurse practitioner, took Plaintiff off of lamotrigine, and Plaintiff was not "willing to trial any other psychotropic medications."  Tr. 716.  On March 7, 2019, however, Plaintiff reported to Randall Hunt, M.S., that he "had a meltdown and starting taking [lamotrigine that] he had left over."  Tr. 762.  Plaintiff then began taking lamotrigine regularly, but he continued to be "quite labile."  Tr. 714.  In fact, on May 2, 2019, he reported to M.S. Hunt that he "took a sledgehammer to one of [his] tractors and destroyed it" out of frustration.  Tr. 754.  Despite increasing his medication and attending therapy regularly throughout 2019, Plaintiff continued to report daily thoughts of suicide.  Tr. 742.

The record also contains regular and persistent reports by Plaintiff to various mental-health providers that he struggled to complete tasks, to leave his property, or, at times even to leave his room. *See, e.g.*, Tr. 600, 601, 643, 646-47, 652, 669-71, 673, 678-79, 714, 716.

The Court concludes on this record that the ALJ erred when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. Opinions of Josh Boyd, Psy.D., and Susan South, Psy.D., reviewing psychologists, and Randall Hunt, M.S., treating therapist.

Plaintiff alleges the ALJ erred when he partially rejected the opinions of Drs. Boyd and South and M.S. Hunt.

"Because plaintiff filed [his] application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about

[disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the Social Security Administration "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation. *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(2)).

> The ALJ may but is not required to explain how
> other factors were considered, as appropriate,
> including relationship with the claimant (length,
> purpose, and extent of treatment relationship;

> frequency of examination); whether there is an
> examining relationship; specialization; and other
> factors, such as familiarity with other evidence
> in the claim file or understanding of the Social
> Security disability program's policies and
> evidentiary requirements.

*Linda F.*, 2020 WL 6544628, at *2 (quoting 20 C.F.R.
§§ 404.1520c(b)(2), (c)(3)-(5)).  *But see* 20 C.F.R.
§ 404.1520c(b)(3)(when an ALJ finds two or more opinions about
the same issue are equally supported and consistent with the
record but not exactly the same, the ALJ must articulate how
these "other factors" were considered).  Thus, the "new
regulations require the ALJ to articulate how persuasive the ALJ
finds medical opinions and to explain how the ALJ considered the
supportability and consistency factors." *Linda F.*, 2020 WL
6544628, at *2 (citing 20 C.F.R. §§ 404.1520c(a), (b);
416.920c(a), (b)).  "At the least, this appears to necessitate
that an ALJ specifically account for the legitimate factors of
supportability and consistency in addressing the persuasiveness
of a medical opinion." *Linda F.*, 2020 WL 6544628, at *2.
Finally, the Court must also "continue to consider whether the
ALJ's analysis has the support of substantial evidence." *Linda
F.*, 2020 WL 6544628, at *2 (citing 82 Fed. Reg. at 5852).

### A.    Drs. Boyd and South

On October 1, 2018, Dr. Boyd reviewed the medical
record and found Plaintiff was moderately limited in his ability
to carry out detailed instructions, "to work in coordination with

20 - OPINION AND ORDER

or in proximity to others without being distracted by them," to
"interact appropriately with the general public," to "accept
instructions and respond appropriately to criticism from
supervisors," and to "get along with coworkers or peers without
distracting them or exhibiting behavioral extremes."  Tr. 76-79.
Dr. Boyd concluded Plaintiff is capable of "carrying out simple
tasks," "occasionally interacting with co-workers and the general
public and responding appropriately to criticism or correction,"
and "will do best working away from coworkers due to social
limits."  Tr. 78-79.

On January 2, 2019, Dr. South reviewed the medical
record and assessed Plaintiff with the same limitations noted by
Dr. Boyd.

The ALJ stated he was only "partially persuaded by the
opinions of the state agency medical consultants, because their
opinions are not entirely consistent with the overall evidence of
record."  Tr. 25.  Specifically, the ALJ noted

> [a]lthough [Plaintiff] demonstrated some [*sic*]
> with occasional agitation, variable impulse
> control, and some difficulty with interpersonal
> interactions, the overall evidence of record
> showed that he presented with a pleasant and
> cooperative demeanor, and he admitted that he was
> generally able to get along with authority figures
> and did not report any problems getting along with
> coworkers.

Tr. 25.  The record, however, reflects multiple occasions when
Plaintiff was angered by others and when Plaintiff had

21 - OPINION AND ORDER

significant problems in maintaining relationships with others. *See, e.g.,* Tr. 656 (Plaintiff became angry and yelled at a neighbor, antagonized his girlfriend, and damaged equipment in his shop); Tr. 657 (Plaintiff's parents avoided him or "walk[ed] on egg shells" when around him so as not to trigger him). *See also* Tr. 589, 574, 718, 641 (same). As noted, Plaintiff described his ability to get along with authority figures as "fair." Tr. 223. He "usually will be diplomatic but will be confrontational if disrespected." *Id*. Drs. Boyd and South specifically noted evidence of "homicidal statements," "intense and chaotic relationships," minimal social contact, argumentative and critical behaviors, "trust issues," and "personality issues which affect his interpersonal relationships." Tr. 73, 89.

On this record the Court concludes the ALJ erred when he partially rejected the opinions of Drs. Boyd and South because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

**B.   M.S. Hunt**

On August 22, 2018, M.S. Hunt, treating mental-health therapist, completed a Medical Source Statement in which he noted Plaintiff is not impaired in his ability "to understand, remember, and carry out instructions." Tr. 772. M.S. Hunt also noted he did not have sufficient information "available to accurately assess" Plaintiff's ability "to interact appropriately

with supervision, co-workers and the public, as well as respond to changes in the routine setting." Tr. 773. Nevertheless, M.S. Hunt opined Plaintiff would miss more than four days of work per month. M.S. Hunt stated Plaintiff's "motivation is at times greatly reduced," and Plaintiff has reported "isolating himself at home when he feels he should be getting work done." Tr. 774.

The ALJ found M.S. Hunt's opinion to be "unpersuasive." Tr. 25. The ALJ noted M.S. Hunt did not address most of Plaintiff's areas of functioning; he did not offer any basis for his evaluation of Plaintiff's "predicted absenteeism"; and, therefore, his opinion was not well-supported. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any [medical professional when] that opinion is brief, conclusory, and inadequately supported by clinical findings.").

On this record the Court concludes the ALJ did not err when he partially rejected M.S. Hunt's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## **REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172,

23 - OPINION AND ORDER

1179 (9th Cir. 2000).  When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178.  The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

24 - OPINION AND ORDER

The Court has already concluded the ALJ erred when he partially rejected Plaintiff's testimony as well as the opinions of Drs. Boyd and South.  When "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the Court credits the opinion as true.  *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004).  *See also Lester*, 81 F.3d at 834 (court credits improperly rejected physician opinion as a matter of law).  In addition, when an ALJ (1) improperly rejects a claimant's testimony regarding his limitations, (2) the claimant would be deemed to be disabled if his testimony were credited, and (3) there are not any other outstanding issues, the court "will not remand solely to allow the ALJ to make specific findings regarding that testimony." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007)(citing *Varney v. Sec'y of Health and Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988)).  Instead the claimant's testimony is to be credited as a matter of law. *Lingenfelter*, 504 F.3d at 1041.  Crediting Plaintiff's testimony and the opinions of Drs. Boyd and South as true, the Court concludes Plaintiff has established he would have difficulty responding appropriately to supervisors, would struggle to remain on task at work, and would possibly experience episodes of uncontrollable anger.

The VE testified at the hearing that an individual who does not respond appropriately to a supervisor's directions or

criticism, "that is, [a person] who uses 'abusive language, a raised voice, maybe physical altercations,'" would "be terminated pretty quickly"; a person who is off-task ten percent of the time "would be terminated due to low productivity"; and an individual who damaged property or equipment in the work setting would be terminated.  Tr. 62-63.  On this record, therefore, the Court concludes Plaintiff is disabled and this matter should not be remanded for further proceedings.  *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000).  *See also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(judgment for the claimant is appropriate when remand for further proceedings would only delay the receipt of benefits).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of

benefits.

IT IS SO ORDERED.

DATED this 16th day of January, 2021.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge

27 - OPINION AND ORDER